IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ESTATE OF CATHERINE GENOVESE    :
and GIUSEPPE GENOVESE,          :CIVIL ACTION NO. 3:11-CV-348
                                :
        Plaintiffs,             :
                                :
        v.                      :(JUDGE CONABOY)
                                :
AAA LIFE INSURANCE COMPANY,     :
                                :
        Defendants.             :

_____

**MEMORANDUM**

_____Pending before the Court is Defendant's "Motion for Summary Judgement of Defendant AAA Life Insurance Company" (Doc. 13).  This action arises out of the claim of Plaintiffs Giuseppe Genovese and the Estate of Catherine Genovese ("Plaintiffs") that Defendant AAA Life Insurance Company ("AAA Life" or "Defendant") is obligated to pay Genovese a $100,000 insurance benefit under group term life insurance issued by AAA Life on the life of Mr. Genovese' late wife, Catherine Genovese.  Defendant claims that Plaintiffs' claim was denied because Decedent's coverage never became effective because she never paid the required premium and because Decedent made a number of material misrepresentations in her Application for coverage, thereby voiding any coverage she arguably had under the certificate.

Defendant filed the present motion for summary judgment (Doc. 13) on September 30, 2011, and statement of material facts (Doc. 14) and supporting brief (Doc. 15) on October 3, 2011.  Plaintiffs filed their Contrary Statement of Material Facts (Doc. 17) on

October 12, 2011, and brief in opposition (Doc. 19) on October 14, 2011.[1]  Defendant filed its reply brief (Doc. 22) on October 21, 2011.  Oral argument on this motion was held on November 15, 2011.  Accordingly, this matter is ripe for disposition.

For the reasons that follow, we will grant Defendant's Motion for Summary Judgment (Doc. 13) and close this case.

## I.   BACKGROUND

Plaintiffs initially commenced this action in the Pennsylvania Court of Common Pleas for Pike County, Pennsylvania, on June 24, 2011.  (Doc. 1-2 at 2.)  On February 22, 2011, Defendant removed the action to this Court pursuant to 28 U.S.C. § 1446.  (Doc. 1.)

Defendant, AAA Life, is a Michigan insurance corporation that is licensed to sell life insurance in Pennsylvania.  (Doc. 15 at 7.)  In March 2010, it sent a direct mail advertisement to AAA members, regarding group term life insurance available to members and their spouses at various face amounts.  (*Id.*)  Individuals could apply by completing an enclosed one-page application that asked five questions about their health.  (*Id.*)  Two of those questions are particularly relevant in this case: they asked if each applicant had used nicotine in any form in the previous 12 months, and whether each applicant had sought treatment for - or been diagnosed with - specified medical conditions during the

---

[1]This document (Doc. 19) was filed incorrectly and deleted by the Clerk's Office.  Plaintiffs' Brief in Opposition to Motion for Summary Judgement was refiled on October 21, 2011, at Document 21.

previous 10 years, including chest pain, high blood pressure, circulatory disorders, or a tumor.  (*Id*.)

Directly above the signature line, the Application warns:

All answers in this application and any questionnaire completed in connection with this application are, to the best of my knowledge and belief, true.  I understand the answers will be used to determine if coverage will be issued, and will be part of the Certificate.

If I misstate any of the information above, the Certificate may be voidable from inception . . .

Warning: Any person who, with the intent to defraud or knowingly facilitates a fraud against an insurer, submits an application or files a claim containing false or deceptive statements may be guilty of insurance fraud and subject to fines and penalties.

(Doc. 15 at 8-9.)

Defendant relied on each applicant's representations in the Application to determine whether the applicant is entitled to coverage, and if so, the appropriate premium for that coverage. (*Id*. at 7.)  Based on its underwriting criteria, with the exception of high blood pressure, applicants who answered "yes" regarding the listed medical conditions were ineligible for the coverage and their applications were denied.  (*Id*.)  Applicants who used nicotine within the 12 months of their application were eligible for coverage, but at a premium rate that is approximately double the premium charged to non-nicotine users.  (*Id*. at 7-8.)

Defendant sends each approved applicant an Insurance Certificate that states the terms of the offered coverage, which

3

the applicant has 31 days to examine and consider. (*Id*. at 8.)  If an approved applicant wants to accept the offered coverage, she must provide Defendant with the first premium payment.  (*Id*.)  Coverage would only be effective when Defendant received that payment, provided it received the payment within 31 days of the date Defendant issued the Insurance Certificate and during the applicants lifetime.  (*Id*.)  If this condition is not satisfied, Defendant's offer of coverage lapses and becomes null and void. (*Id*.)

On or about March 22, 2010, Decedent applied for $100,000 of coverage on her life, answering "No" to each of the Application's questions.  (Doc. 15 at 8.)  Based on Decedent's representations, Defendant approved her for the requested coverage at the premium rate reserved for non-nicotine users.  (*Id*. at 9.)   According to Defendant, had Decedent stated she had used nicotine in the preceding 12 months, Defendant would have charged her a significantly higher premium, and had she admitted to any of the listed medical conditions, Defendant would have required additional investigation and may have denied coverage altogether.  (*Id*.)

Defendant sent Decedent an Insurance Certificate on April 1, 2010 ("Issue Date").  (*Id*. at 9.)  The Insurance Certificate states, in part:

**Statements**

We consider all statements made by You in the

4

application to be representations and not
warranties unless they are fraudulent.

(*Id.*)

The Insurance Certificate stated the Effective Date of coverage would be April 5, 2010, provided AAA Life had received her first premium payment. (*Id.* at 10.)

In this regard, the Insurance Certificate states:

The first premium due is the Total Initial Modal
Premium shown on the Schedule Page.  You must pay
the first premium within 31 days of the Issue Date
and during Your lifetime . . . <u>We will consider
the premium paid when it is received at Our
mailing address shown on the first page of this
Certificate.</u>

(*Id.*)(emphasis added).

In submitting her Application for insurance coverage, Decedent authorized Defendant to charge her premium to her Discover credit card, providing the account number in the Application.  (*Id.*) Defendant attempted to charge Decedent's premium, using the credit card number Decedent had written on the Application, however, according to Defendant, it could not complete the transaction because the credit card number was wrong or AAA Life's agents could not correctly decipher it, and the transaction was refused.  (*Id.* at 10-11.)  By letter on April 6, 2010, Defendant notified Decedent it could not complete the transaction and it would invoice her for the outstanding premium or she could try to charge another credit card by completing the enclosed Authorization to Charge the Premium.  (*Id.* at 11; Doc. 13-1 at 28.)

5

On April 27, 2010, Decedent's daughter, Crystal Genovese, telephoned Defendant and reported that Decedent had died on April 24, 2010.  (*Id.*)  Crystal Genovese asked how to make a claim for insurance benefits under the Policy, and the AAA Life representative explained that because she had not paid any premium in her lifetime, Decedent was not covered under the Policy.  (*Id.*)

Thereafter, on April 28, 2010, Defendant received an Authorization to Charge Premium signed by Decedent on April 17, 2010.  (*Id.*)  According to Defendant, because it had already been advised of Decedent's death, the offer of coverage was no longer valid and it did not attempt to process the charge.  (*Id.*)

Plaintiffs dispute Defendant's denial of coverage, noting that the Certificate of Insurance Coverage for Decedent was issued on April 1, 2011, and the initial premium was twice tendered, once by signing Defendant's credit card authorization at application, and then again on April 17th by resubmitting Decedent's signed form via mail sent prior to Decedent's death.  (Doc. 21 at 2.)  Plaintiffs assert that Defendant's manager, Kristen Shopshear, later admitted to Crystal Genovese that Defendant's Third Party Credit Card administrator frequently made mistakes.  (*Id.*)

Plaintiffs also contest Defendant's determination that Decedent's insurance application was fraudulent since (1) her answer that she did not use nicotine products for one year prior to the application was false; and, (2) Decedent failed to disclose a

known tumor, which she allegedly had years prior to the
application.

Plaintiffs aver by affidavits of Giuseppe Genovese and Crystal
Genovese (Docs. 21-1, 21-2) and Defendant's own medical records
that Decedent stopped smoking over one year prior to application,
and instead was using the prescription drug, Chantix, to avoid
nicotine use. (*Id.* at 2-3.) Further, Plaintiffs argue that in
2004 Decedent was diagnosed with a benign nodule, not a tumor, and
she therefore was never aware of or ever had a "tumor." (*Id.* at
3.) Plaintiffs further argue that Decedent also did not have any
heart or circulatory disorders. (*Id.*)

Moreover, Plaintiffs assert that Defendant's Motion and
Affidavits do not support denial of coverage based upon use of
nicotine products. (Doc. 19 at 7.) Plaintiffs argue that the
evidence submitted demonstrates that if tobacco use were disclosed,
the coverage would not be voided but rather issued at a higher
premium. (*Id.*) Therefore, Plaintiffs claim that Defendant cannot
deny coverage on this basis. (*Id.*)

## II.   LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to judgment
as a matter of law." *See Knabe v. Boury*, 114 F.3d 407, 410 n.4 (3d

7

Cir. 1997)(*citing* Fed. R. Civ. P. 56(c)).  "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the law applicable to the case.  *Id.* at 248.  An issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party.  *Anderson*, 477 U.S. at 257.  In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party.  *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact.  The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof."  *Celotex*, 477 U.S. at 325.  The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the

like in order to demonstrate specific material facts which give
rise to a genuine issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317,
324 (1986).  When Rule 56(e) shifts the burden of proof to the non-
moving party, that party must produce evidence to show the
existence of every element essential to its case which it bears the
burden of proving at trial.  *Equimark Commercial Finance Co. v.
C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

        "In considering a motion for summary judgment, a district
court may not make credibility determinations or engage in any
weighing of evidence."  *Anderson*, 477 U.S. at 255.  Therefore, when
evidentiary facts are in dispute, when the credibility of witnesses
may be in issue, or when conflicting evidence must be weighed, a
full trial is usually necessary.

**III.  DISCUSSION**

        Defendant brings this motion for summary judgment arguing that
this action should be dismissed and Plaintiffs' claim denied
because: (1) Decedent failed to satisfy an unambiguous condition
precedent to coverage; and (2) in any event, her material
misrepresentations in the Application preclude coverage in her
case.  We will address these arguments in turn.

    **A.    First Premium Payment as a Condition Precedent**

        We find that Decedent failed to satisfy the condition
precedent of the policy of making her first premium payment prior
to her death, and therefore conclude that summary judgment is

9

appropriate in this case.

Under Pennsylvania law, the creation of an insurance contract requires an offer, an acceptance, and a meeting of the minds. *See Moser Mfg. Co. v. Donegal & Conoy Mut. Fire Ins. Co.*, 362 Pa. 110, 66 A.2d 581, 582 (1949). The intent of parties to a contract is determined by the unambiguous terms of their contract, giving those terms their ordinary meanings. *See, e.g., Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 566 Pa. 494, 502, 781 A.2d 1189, 1194 (2001); *Chester Carriers, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 767 A.2d 555, 559 (Pa. Super. Ct. 2001); *Potts v. Metro. Life Ins. Co.*, 133 Pa. Super. 397, 406, 2 A.2d 870, 874 (Pa. Super. Ct. 1938). An insurance contract's terms are stated in the application and insurance certificate. *See, e.g., Sunbeam Corp.*, 566 Pa. at 502, 781 A.2d at 1194; *Potts*, 133 Pa. Super. at 406, 2 A.2d at 874.

Courts have held that an insured must comply with any condition precedent stated in the policy in order to obtain coverage, and the insured is imputed with knowledge of such terms. *Kelly v. Allstate Ins. Co.*, 138 F. Supp. 657, 662 (E.D. Pa. 2001)("payment of premiums is said to be the very essence of an insurance contract; premium payments are a condition precedent"); *Superka v. Valley Forge Life Ins. Co.*, 44 Pa. D. & C. 4th 92 (Ct. Com. Pl. 1999).

In this case, it is undisputed that under the policy the payment of the premium is a condition precedent to coverage. The

10

Insurance Certificate clearly states that the coverage Defendant offered Decedent would only become effective if Decedent paid the requisite premium within 31 days of the Insurance Certificate's "Issue Date" and during her lifetime.  It also plainly states that Decedent's premium is not paid until Defendant actually receives the payment at its offices.  Moreover, the Insurance Certificate states that the offered coverage is automatically withdrawn and void if the premium is not paid within 31 days of the Issue Date and during Decedent's lifetime.

We agree with Defendant that because Defendant never received the first premium payment from Decedent prior to her death the offered coverage never became effective and ultimately lapsed at the time of Decedent's death.  (Doc. 15 at 17.)  We find Decedent's unsuccessful attempts to pay by credit card do not change this result.

Plaintiffs argue that when a party makes payment, whether by check, credit card or otherwise, and the Defendant fails to process, acknowledge or accept the payment, payment is considered made and the condition of payment is met.  (Doc. 19 at 4 (citing *Sunbeam Corp. v. Liberty Mutual*, 566 Pa. 494, 781 A.2d 1189 (2001)).)  According to Plaintiffs, the payment part of the Decedent's application, signed and filled in by the Decedent, puts the burden on the Defendant contractually to comply.  (*Id.* at 4.) Plaintiffs argue Defendant's failure, through a Third Party

11

Administrator, to properly process the credit card was not the fault of the Decedent. (*Id*. at 5.)

We are not persuaded by this argument. We find that this is not a case where an insurance company "fails to process, acknowledge or accept the payment" as Plaintiffs contend. In fact, it is undisputed that upon receipt of Decedent's Application, Defendant's agents attempted to process the payment, but it was rejected.

Likewise, Plaintiffs' unsupported assertion that Decedent effectively paid the premium by simply providing her credit card number is unsupported by law and in contradiction to the unambiguous language of the Insurance Certificate. First, the mere fact that Decedent provided her credit card number, that could not be processed, is not sufficient to establish that payment was made. This is akin to payment by a check that is dishonored for insufficient funds. *See, e.g., Nanda v. Selective Ins. Co.*, No. Civ. A. 96-7661, 1997 WL 667151 (E.D. Pa. Oct. 10, 1997); *O'Brien v. Nationwide Mut. Ins. Co.*, 455 Pa. Super. 568 (1997); *American Hardware Mut. Ins. Co. v. BIM, Inc.*, 885 F.2d 132 (4th Cir. 1989)(If payment of the premium is a condition precedent to the insurance contract, the insured's tender of a worthless premium check constitutes a failure of consideration and leaves the condition precedent unsatisfied.) Next, as Defendant argues, "the Insurance Certificate plainly states that a premium payment is effectively

12

paid when AAA Life actually receives it - not when AAA Life receives what is effectively a promise the premium will be paid on the applicant's behalf by a credit card company, along with consent to charge the credit card and the provision of the account number." (Doc. 22 at 13.)  Finding otherwise would result in effectively re-writing the contract that the parties agreed to.

Further, even if we found that the payment was timely received when the credit card numbers were first submitted, the inability of that payment to be processed at a later date would be a basis to void coverage.  *See American Hardware Mut. Ins. Co.,* 885 F.2d at 137 (4th Cir. 1989) (if insurer has required premium as condition, insured's tender of worthless check in satisfaction of resulting "condition precedent" would render any apparent coverage void ab initio); *Megee v. U.S. Fidelity & Guaranty Co.*, 391 A.2d 189, 191-92 (Del. 1978)(If prepayment of the initial premium is made a condition precedent, in the absence of a waiver of the provision by the insurer, the insurance contract is not consummated, nor is the risk assumed by the insurer, until payment is made); *Markel American Ins. Co. v. Pedraza*, 1999 AM.C. 2152, 1999 WL 1293478 (S.D. Fla. 1999)(unsuccessful attempt to pay premium by credit card does not constitute payment), *rev'd in part, vacated in part*, 252 F.3d 1359 (11th Cir. 2001)(without opinion); *Travelers Indemnity Co. v. Mirlenbrink*, 345 So.2d 417 (Fla. 2nd DCA 1977(insurer not estopped from returning invalid payment despite cashing insured's

13

check).)

Moreover, we do not find that Plaintiffs' assertion that Defendant's manager, Kristen Shopshear, admitted to Crystal Genovese that Defendant's Third Party Credit Card administrator frequently made mistakes, creates a material issue of fact as to whether or not payment was made.  While we are certainly aware of authority that "an insurer will not be permitted to take advantage of the failure of the insured to perform a condition precedent contained in the policy, where the insurer itself is the cause of the failure to perform the condition" *Wise v. American General Life Ins. Co.*, 459 F.3d 443, 448 (3d Cir. 2006) (citing *Fratto v. New Amsterdam Cas. Co.,* 434 Pa. 136, 252 A.2d 606, 607 (1969)(internal quotations omitted)), we find that this is not a case where the insurer frustrated the payment or was "the cause of the failure to perform the condition."  On April 6, 2010, shortly after the credit card numbers Decedent provided could not be processed, Defendant wrote Decedent informing her of the issue and giving Decedent another opportunity to effectuate payment.  (Doc. 13-1 at 28.)  Therefore, this is not a case where a defendant insurer sits back and does nothing after a payment could not be processed while the applicant falsely believes they have coverage. Additionally, Defendant contends that the credit card numbers received from Decedent were indecipherable and therefore has a valid, justifiable argument as to why the initial credit card

14

numbers could not be processed.

We further find that Decedent's untimely mailing of a second authorization to charge her credit card does not support Plaintiffs' claim in this case. As noted above, after receiving correspondence from Defendant that the credit card payment could not be processed, Decedent signed a second credit card authorization on April 17, 2010, and resubmitted it to Defendant. (Doc. 19 at 5.)

According to Plaintiffs, Defendant chose not to process the second attempted payment because of the intervening death of insured, although it had been received by mail. (*Id.*) Plaintiffs argue this is contrary to the written contractual obligation of the Defendant, and contrary to the tender requirements of premium payments in the Commonwealth of Pennsylvania. (*Id.*)

Again, we are not persuaded. In the supporting affidavit of Kristen Shopshear, Defendant asserts that this second authorization was not received until April 28, 2010, four days after Decedent's death. Plaintiffs do not contest this fact. Because Defendant's offer of coverage to Decedent was effectively null and void at the time of her death on April 24, 2010, we agree with Defendant that there was no purpose to attempting to complete this charge.[2]

---

[2]While we would have liked to see additional corroboration of Shopshear's affidavit with a postmarked envelope as further evidence of the date of receipt, or a detailed explanation as to how the mail is processed by Defendant, we find the unopposed affidavit sufficient evidence.

Plaintiffs have offered no contradictory evidence that it was received by Defendant earlier than April 28, 2010.  Moreover, as Defendant's counsel explained at oral argument, it would not be practical to expect an insurance company to keep every postmarked envelope that comes through the mail.

Furthermore, even if Defendant had charged Decedent's credit card pursuant to the second authorization when it received it on April 28, 2010, as Plaintiffs suggest it should have, that fact would not change the result in this case.  The Insurance Certificate plainly states that coverage could only become effective if it actually received Decedent's premium payment at its offices *during Decedent's lifetime*.  Obviously, that condition could no longer be satisfied as of the date of Decedent's death.

Finally, we find Plaintiffs's assertion that issuance of the Insurance Certificate itself created coverage is misguided.  Under the law, the issuance of the Insurance Certificate equates only to an offer of insurance, which Decedent had 31 days to consider and could only accept by paying the premium in her lifetime.  (*Id.* (citing *Wise v. Am. Gen. Life. Ins. Co.*, Civ. A. No. 04-3711, 2005 U.S. Dist. LEXIS 4540, *9 (E.D. Pa. 2005)("issuance of written life insurance policy was merely proposal to contract)(citing *Recupito v. Inter-Ocean Ins. Co.*, 362 F. Supp. 577, 580 (D.C. Pa. 1973)))).)

Ultimately, having considered the arguments and record evidence before us, we find there is no issue of material fact as

16

to whether the first premium payment was made in accordance with the policy.  Because the premium payment was not made prior to Decedent's death, the life insurance policy never became effective. Even construing the facts in the light most favorable to Plaintiffs, we find no genuine issue of material fact exists concerning whether this condition precedent to coverage was met. Accordingly, we will grant Defendant's motion for summary judgment on this ground.

**B.   Misrepresentations about Smoking and Health**

We also find that Decedent's material misrepresentations of her nicotine use made in her Application for Life Insurance preclude coverage and warrant summary judgment in this case.

It is black-letter law that an insurance contract procured through misrepresentations is void.  An insurer demonstrates such invalidity of a policy by demonstrating that: (1) the insured made a false representation; (2) which she knew was false or it was made in bad faith; and (3) the misrepresentation was material to the risk being insured.  *N.Y. Life Ins. Co. v. Johnson*, 923 F.2d 279, 281 (3d Cir. 1991)(citing *Lotman v. Security Mut. Life. Ins. Co.*, 478 F.2d 868, 870 (3d Cir. 1973)); *Shafer v. John Hancock Mut. Ins. Co.*, 410 Pa. 394, 398, 189 A.2d 234, 236 (1963); *A.G. Allebach, Inc. v. Hurley*, 373 Pa. Super. 42, 52, 540 A.2d 289, 294 (1988).

A misrepresentation – or fraud – is defined as:

"[A]nything calculated to deceive, whether by single act or combination, or by suppression of

17

> truth, or suggestion of what is false, whether it
> be by direct falsehood or by innuendo, by speech
> or silence, word of mouth or look or gesture."

*Rohm & Haas Co. v. Cont'l Cas. Co.*, 566 Pa. 464, 477, 781 A.2d 1172, 1179 (2001)(quoting *Moser v. Desetta*, 527 Pa. 157, 589 A.2d, 682 (1991)).

Misrepresentations are presumptively made in bad faith when knowingly or recklessly made. *Burkert v. Equitable Life Assurance Soc'y of Am.*, 287 F.3d 293, 298 (3d Cir. 2002); *Solodky v. Peoples Benefit Life Ins. Co.*, Civ. A. No. 05-2555, 2005 U.S. Dist. LEXIS 31236, * 13 (E.D. Pa. Dec. 6, 2005); *Am. Home Assurance Co. v. The Church of Bible Understanding*, Civ. A. No. 03-6052, 2006 U.S. Dist. LEXIS 63859, *18-19 (E.D. Pa. Sept. 6, 2006)(statements made by an insurance broker are presumptively made in bad faith by the insured when he signed the application without reviewing it).

Fraud is typically inferred from a case's facts. *Rohm v. Haas Co.*, 566 Pa. at 476-77, 781 A.2d at 1179:

> [F]raud "is never proclaimed from the housetops
> nor is it done otherwise than surreptitiously with
> every effort usually made to conceal the truth of
> what is being done.  So fraud can rarely if ever
> be shown by direct proof.  It must necessarily be
> largely inferred from the surrounding
> circumstances."

This is particularly true when the facts make it unlikely the misrepresentation was a mistake. *Solodky*, 2005 U.S. Dist. LEXIS 31236, *12 (quoting *Derr v. Mut. Life Ins. Co.*, 351 Pa. 554, 558, 41 A.2d 542, 544 (1945)).  This presumption enables courts to

enforce the requirement that an insured "'impart [her] knowledge to the company in [her] answer to the question.'"  *Id.*

A misrepresented fact is material to insurance coverage when it "'increases the risk, or which, if disclosed, would have been a fair reason for demanding a higher premium.'"  *N.Y. Life Ins. Co.*, 923 F.2d at 282; *McCaffrey v. Knights & Ladies of Columbia*, 213 Pa. 609, 612 (1906)("anything which increases the risk cannot be said to be immaterial").

Under this rule, courts deem insurance policies obtained through an insured's misrepresentation to be void even if the insurer would have issued the policy had it known the truth, but only with limitations or at a higher premium.  *Id.*; accord *Rohm & Haas Co.*, 566 Pa. at 477, 781 A.2d at 1179; *A.G. Allebach*, 373 Pa. Super. at 52-53, 540 A.2d at 295.

Defendant argues that here Decedent's denial of nicotine twelve months before her application was false.  (Doc. 15 at 21.) In support of this argument, Defendant argues that just four months before she signed the Application, Decedent told her doctor she continued to smoke one to one and-a-half packs of cigarettes a day. (*Id.*)  In addition, on the day of her death, her husband told emergency medical personnel that she smoked and characterized the frequency and amount as "a lot."  (*Id.*)  Similarly, Decedent's medical records contain a long history of similar admissions. (*Id.*)

19

Defendant asserts that given these facts a reasonable juror could not conclude that Decedent's denial of nicotine use was truthful or made by mistake. (*Id.* at 22.)  According to Defendant, Decedent knew full well she was lying and did so in bad faith, with the intent of inducing Defendant into insuring her at a lower premium that it would have otherwise. (*Id.* (citing *Rohm & Haas Co.*, 566 Pa. at 476-77, 781 A.2d at 1179; *Solodky*, 2005 U.S. Dist. LEXIS 31236, at *12).)  Defendant asserts that these misrepresentations were material because they go directly to the risk of being insured and the premium amount to be charged for the coverage. (*Id.* at 22 (citing *N.Y. Life Ins. Co.*, 923 F.2d at 283).)  Defendant relied on these misrepresentations when it approved Decedent's Application and provided her the premium reserved to non-smokers, and had it known the truth, it would have charged her nearly twice the premium as the one she received. (*Id.* at 22.)

In her Application for insurance, Decedent also denied seeking treatment for or being diagnosed with a tumor, high blood pressure, or chest pain. (*Id.*)  Defendant argues, however, that Decedent's medical records reveal these representations were also false. (*Id.*)  Defendant asserts that Decedent underwent extensive medical testing in 2004 concerning a tumor in her left lung. (*Id.*)  Further, in 2006, Decedent was diagnosed with high blood pressure which she acknowledged later when she sought medical treatment for

chest pain.  (*Id*. at 22-23.)

Defendant argues that had Decedent been truthful about her smoking and medical history, Defendant would have denied her application or charged her a higher premium.  (*Id*. at 23.) Therefore, Defendants argue Decedent's misrepresentations were material to the coverage and would have voided any coverage she received.  (*Id*. (citing *N.Y. Life Ins. Co.*, 923 F.2d at 282-83; *Cummings v. Am. Gen. Life Ins. Co.*, Civ. A. No. 06-3468, 2008 U.S. Dist. LEXIS 37157, at *15 (E.D. Pa. May 7, 2008)).)

In response to this argument, Plaintiffs argue that despite Defendant's contentions, material issues of fact remain.  (Doc. 21 at 6.)  First, Plaintiffs argue a dispute of fact exists as to whether the Decedent used nicotine products during a twelve month period prior to application.  (*Id*.)  According to Plaintiffs, there is no evidence direct, indirect, or otherwise, of nicotine product use during the relevant period.  (*Id*.)  Plaintiffs argue that any reference in the medical records to Decedent smoking related to her history prior to the relevant time period.  (*Id*.)

With regard to the tumor, Plaintiffs argue the alleged failure to disclose the fact of a prior tumor is not supported by Defendant's evidence as submitted.  (Doc. 19 at 7.)  According to Plaintiffs, there is no proof offered that Decedent had a tumor, but rather a benign nodule, non-cancerous and with no resulting treatments.  (*Id*.)  Contrary to Defendant's allegations, Plaintiffs

argue, the medical records clearly and repeatedly note the existence of a benign nodule, or lung nodule, solitary pulmonary nodule, or soft tissue nodule, but none state that a tumor existed. (*Id.*)

Finally, Plaintiffs argue the evidence read in the light most favorable to Plaintiff shows no evidence of, or knowledge by Decedent of, the existence of other medical conditions warranting denial of coverage.  (*Id.*)  Plaintiff argues that Defendant has not submitted irrefutable proof of fraud.  (*Id.*)

Again, even when construing the facts in the light most favorable to Plaintiff, we find summary judgment appropriate here. Pivotal to this determination is Decedent's own admission about her nicotine use to her physician on December 16, 2009.  Here, while getting medical care for a chronic cough, Decedent unequivocally stated that she "continues to smoke 1 to 1 ½ ppd" just four months prior to her death and within the relevant 12-month pre-application time frame.  Importantly, Plaintiffs do not challenge the authenticity or accuracy of this document and there is no viable dispute about whether Decedent made this statement.

While Plaintiffs offer the affidavits of Guiseppe and Crystal Genovese in opposition to this evidence, we find these affidavits nebulous at best.  The affidavits merely claim that they did not personally witness Decedent smoking after January 2009.  However, lacking from the nondescript affidavits is any indication that they

22

would have a basis to know if Decedent was still smoking.  "They do not claim they were in a position to see her smoking or that it was somehow impossible - or even difficult - for Decedent to hide her smoking from them."  (Doc. 22 at 4.)

As Defendant argues, regardless of whether Decedent hid her smoking from Plaintiffs, the undisputed fact remains that she told her physician in December of that year that she was smoking.  We agree with Defendant that "there is no basis to support a suggestion that Plaintiffs' purposed non-observations are somehow more reliable on the issue of Decedent's smoking than Decedent's own, unequivocal, statement to her physician, which she made while seeking medical care."  (Doc. 22 at 6.)

Accordingly, we find Decedent's admission on December 16, 2009, patently inconsistent with her denial of having used nicotine in any form in the twelve months prior to March 22, 2010 (the date of Decedent's Application), and find her denial of nicotine use on the Application to be a material misrepresentation.

Finally, we find Plaintiff's argument that Decedent's misrepresentation about her nicotine use should not vitiate the claimed coverage because Defendant insured applicants who use nicotine, albeit at a higher premium, similarly unavailing.  As argued by Defendant, it is clear from the United States Court of Appeals for the Third Circuit's decision in *N.Y. Life Ins. Co.*, that if an insurer would have charged a higher premium had it known the misrepresented fact, the misrepresentation is material, and

23

therefore, coverage is void.  923 F.2d at 283.

Although unnecessary based on our determination with regard to the premium payment issue, we find Decedent's misrepresentations about her nicotine use in the Application material.[3]  Accordingly, we find such misrepresentation would void the coverage claimed by Plaintiffs, and therefore grant Defendant's motion for summary judgment on this ground.

**IV.   CONCLUSION**

For the reasons discussed above, Defendant's Motion for Summary Judgment (Doc. 13) is granted.  This case will be closed. An appropriate Order follows.

Dated: November 21, 2011 _____

                              S/Richard P. Conaboy
                              RICHARD P. CONABOY
                              United States District Judge

---

[3] Because we have made our determination on the issues discussed herein, we will not discuss, nor do we make any finding on, Defendant's additional arguments concerning Decedent's misrepresentations about other medical conditions.

24

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ESTATE OF CATHERINE GENOVESE    :
and GIUSEPPE GENOVESE,          :CIVIL ACTION NO. 3:11-CV-348
                                :
        Plaintiffs,             :
                                :
        v.                      :(JUDGE CONABOY)
                                :
AAA LIFE INSURANCE COMPANY,     :
                                :
        Defendants.             :
_____

**ORDER**

AND NOW THIS 21st  day of November 2011, for the reasons discussed in the accompanying Memorandum, it is hereby Ordered that:

    1.    Defendant's Motion for Summary Judgment (Doc. 13) is
          GRANTED;

    2.    The Clerk of Court is directed to close this case.




                              S/Richard P. Conaboy
                              RICHARD P. CONABOY
                              United States District Judge